May it please the court, I'm John Ward here for Mr. Humphrey. I suppose the best way to begin this case is with sort of the cliff notes of Bills v. Clark, which has two parts. First of all, whether the petitioner can personally file the habeas. And secondly, if he was diligent in seeking somebody that could. As for the first part, you know this case started off in Superior Court and there was an expert witness. And she testified unequivocally that he was functionally illiterate. And she also said that she tested him about reading recipes and various simple matters of that kind. And he was unable to do so. That's not to say that his verbal skills perhaps were not greater, but his written skills were zero. So I don't think that that part of the case needs trouble. Of course, I'm open to the fact that you may very well disagree with me, but I don't think that that part of the case really needs to trouble. So he missed the statute of limitations here to file a federal habeas petition, correct? Right. That's that. Right. Okay. So then the district court dismissed it. They dismissed it before Bills. Right. They didn't have the advantage of Bills. Yeah. So what are you asking us to do? Remand. And what do we tell the district court to do on remand? Well, the district court dismissed out of hands Mr. Humphrey's claims that he did his best, but because of various things such as lockdowns, access to law libraries, various conditions. He was at Corcoran, which is not a very nice place. And so it took him some time to find somebody. I suspect, although it's not in the record, that some money had to change or something had to change. Well, I'm just asking, so we send it back to the district court in light of Bills, and what happens? He calls the writ writer, and the writ writer explains. He calls Humphrey, and Humphrey explains. So do you think he has to make any showing on his incompetency at all, any kind of showing? I don't. I think that's already shown, honestly. Why do you presume that? Well, because of the strength of the testimony of Ms. Cowardin, which nobody would respond to. That was many years ago, correct? Yeah, but she also said that he was getting worse. But before the district judge, I mean, you're going to be asking the district judge, I take it, to hold that the time to file was equitably told, correct? I'm sorry? You're going to be asking the district judge to make a finding that there's an equitable tolling of the time to file the habeas petition. Yes. So what do you need to prove to the district judge? I know you have a declaration that says perhaps his condition is worse. You also have some argument that one of the reasons that he didn't get to file was his lawyer didn't give him good advice. But that's, I mean, that's really not to the point, is it? Well, it was an argument you all made. No, no, it was. Well, wasn't there some argument about whether or not, had the lawyer given him the correct deadline, he might have moved earlier? Well, that was my esteemed colleague. Right, and didn't the district court say, yeah, I think that's right? Well, but the state court lawyer had no real duty to do that, you know. So, again, let's go back. What's the nature of it? So let's assume you win. We say we remand in light of bills. You should consider district court in light of bills with the various factors for equitable tolling. What does the district court then do? Well, I know you'd like us to say it's equitably tolled, but that's not a job for us. No, I know. But I just lost my train of thought. That's okay. This is an easy question. You've won. What would you like us to tell the district court to do? Well, to examine the writ writer and ask him what the conditions were. Is that necessary? So you're concerned that the record is insufficient to show that he was diligent in trying to get his petition filed? Well, I kind of think he sort of was. I mean, you know, I cited, I wrote a 28-J letter yesterday in a panic in which I said that a petitioner, in showing due diligence, just has to make some decent allegations. He doesn't have to prove up a case. Well, he has to make some decent allegations to create a factual issue for the district court. And the allegations were there was a series of lockdowns at Corcoran, that he was mentally incompetent, that he did his best to find somebody, and the magistrate judge said, this doesn't add up to a hill of beans. And I think it actually does. Because, you know, Bill says you have to be reasonably diligent in looking for somebody. And if you consider the atmosphere of Corcoran prison, I don't think you can say out of hand on a cold record. Could the district court on remand, instead of worrying about equitable tolling, simply look at the merits of the habeas petition and deal with it? That's happened to me before in the court of appeals. I mean, this appears to be a habeas petition based on Miranda, you said, right? Yeah. And there was a state court finding that he was competent to waive his Miranda rights. That went up through the state court appellate process. So we'd have to find, in the federal system, we'd have to find that that was an unreasonable application of the law or facts. Isn't it easier just to ask the district court to deal with this on the merits? Excuse me if I disagree a little bit. Please. His claim in the state court was that he didn't understand the Miranda warnings, but they were verbally given to him. And there's nobody disputing that he pretty well gets it, you know, with the mind. And whether they were right or wrong about that, who knows? But the issue before this court is a strictly federal issue of timeliness. No, no, I understand. But it strikes me that the underlying habeas claim, what he's claiming, is a relatively easy matter for a district court to dispose of because there's a state court record where somebody made a factual finding. Could we just tell a district court it has the discretion to move directly to the merits and deal with it that way? And offer me a pyrrhic victory. Well, it may be a pyrrhic victory in any event. That's what I'm asking. We're all spending a lot of time figuring out when this gets heard, and it seems to me it can be heard pretty quickly if that's really the claim. I can't honestly deny that that is an option. Well, I remember sitting and watching a British court in London, and the judge would look at counsel and ask, well, what can we do for you today? So that's one of the questions we asked you. What would you like us to do? Well, first of all... You know, so you have to tell us. Okay. First of all, the remand. Secondly, the issue of whether or not the state court findings vis-à-vis the Miranda was objectively reasonable under HEDPA. Well, we can't get to that issue here. It's not in front of us. No, you can't. We can't. The case got dismissed for lack of jurisdiction. Right. And he claimed, well, you should toll the statute of limitations because my mental impairment prevented me from meeting the deadline. Correct. Right? Correct. So we either have to say that on this record there was a sufficient showing of facts that would lead to the legal conclusion of equitable tolling, or we send it back to tell the district court, conduct an evidentiary hearing, confirm that all the elements of equitable tolling, his mental impairment, affected his ability to file timely, and he acted with some diligence in consulting with prison house lawyers or whoever it might be. Right. And then if that's the case, we've got all those facts, we've got equitable tolling, and get on to the merits of the petition. And honestly, I don't think that's a slam dunk because of the testimony of Dr. Coward. And I guess my question, I didn't mean to get you off track, was rather than ask the district judge to hold a three-day evidentiary hearing on equitable tolling, could we say to the judge, you may move directly to the merits of the petition if you want and if you find nothing there? You can assume equitable tolling. In other words, you, the court, find equitable tolling. Well, I don't. I was thinking out loud. It just seemed like a waste of resources to ask a district judge to hold a hearing that involves bringing a bunch of people in from prison when the underlying petition might be easier to dispose of. But I think I was thinking out loud there, so you need not. I'm out of time, but I just want to say that district courts seem to have a penchant to dump these cases on time unless when really they ought to take a look at the appearance. Yeah.  Thank you. Thank you. Good morning, Your Honors. Deputy Attorney General David Cook, on behalf of Respondent, what I would like you to do is affirm the judgment of the district court. And the reason is the record is absolutely clear that Petitioner, on remand, should the district court be ordered to apply the bill's test, which is the scope, the extent to which this court could remand the case, under this record, and especially when considering what the district court had to say about the equitable tolling issue, there is no way Petitioner can establish he's entitled to a hearing under the bill's test. Well, the district court didn't have bills in front of it when it made this decision, correct? That is correct. And in bills, we try to lay out how the district court should approach these claims for equitable tolling, correct? This court did articulate the district court. Now, you think there's enough in the record here to suggest that we ought to at least give him an opportunity to show the district court that under bills, he's at least entitled to an evidentiary hearing. With all due respect, Your Honor, this Petitioner had three, we talk about having your day in court. Well, on this particular issue, Petitioner has had three days in court. He had the opportunity to explain his delay in his opening petition in opposing Respondent's motion to dismiss. Now, did he have, was he assisted by counsel when he filed that opening petition? Petitioner had, I don't recall, I couldn't quote. When did he get counsel? I can't quote to you when that happened, but he makes a statement in either his opposition to the motion to dismiss or in his objections to the R&R, I don't remember which of the two. But he does say that he had the help of other legal inmates. Right, jailhouse lawyers. Well, we can only go by what he says. Right, I understand. Well, obviously that's what he's talking about, correct? Absolutely. And the district court, on the matter of diligence, with all due respect to co-counsel, the district court assumed that Petitioner was being diligent. So the district court itself assumed part two of the bill's test. But let me go back to part one of the bill's test, which says the Petitioner must demonstrate a mental impairment that is so severe that he is unable to understand the need to timely file and to personally timely file. In this case, Dr. Howarden's opinion, which was offered in state court, and if I may quote from Petitioner's own, this would be excerpts of record at page 145. The expert further opined, however, that Petitioner's spiky scores on different assessments were, quote, far more consistent with a diagnosis of a specific learning disability than a developmental disorder such as mental retardation. Now, that's Petitioner's own. The expert on which Petitioner's own. Well, he doesn't have to show mental retardation in order to qualify for equitable tolling. Under bills, he must show. He must show that his condition, his mental impairment or his illiteracy, I think even illiteracy, he could make it up with an illiteracy showing. But he has to show that it affects his ability to understand the need to file a timely petition. Two problems with what you have just said, with all due respect, Your Honor. One, illiteracy under Hughes in this case was cited in Appellee's brief. Illiteracy cannot be a basis for equitable tolling. That decision is clear. This Court, with all due respect, cannot contravene that decision. Petitioner's own allegation is that he had his attorney explain to him what the time requirements were. He would have filed on time. That allegation in and of itself is a concession that he is able to understand. Whatever his mental status would be diagnosed as, whatever he would characterize it, I'm not a mental health expert myself, but I'm going by what Dr. Calvertian says, a learning disability. He has conceded the very he has conceded under the bill's test that he cannot meet that first section. And that was contained where? Element. I'm sorry, Your Honor. That was contained where? The statement by Petitioner that had his lawyer only told him what the deadline was, he would have met it. Those statements were either made in his opposition to the motion to dismiss or he up to it. Yeah. I'm asking where in the record, okay? I know you rely on them in your brief. See, I'm wondering whether they were made by counsel or by Petitioner. That's my question. Well, Petitioner signed all of his briefs on his own. Per se. He had to sign them. He has not offered any declaration from these inmates? No. These guys are in jail. I mean, he's got an IQ of 67. He gets a jailhouse lawyer. Did he sign the Miranda waiver? I don't recall if there was a signature before the police. No. But he waived his rights. The record, there was no dispute before us that he waived them. He didn't sign a Miranda waiver. But he did read the advisements to the police officer. That's not in dispute, Your Honor. That's what the police officer said. A fact which is not in dispute between the parties. But the police officer hadn't signed a waiver. Why? Tell me why. Simple thing to do. I don't know. I'd have to go back and look over the testimony that was presented in state court to see whether that, in fact, was true. However, Your Honor, the state court, the Superior Court, and the Court of Appeal, who reviewed this, and found that Petitioner voluntarily and knowingly waived, despite whatever mental status evidence he submitted, voluntarily and knowingly  Well, it's easy to rattle off those words. Pardon me? It's easy to rattle off those words. Your Honor, again, I go back to this being Petitioner's attitude. I'll tell you something. I'm getting old. I don't care. I worry too much about what I say. But the state court system does a bad job when it comes to these, like, habeas petitions. They do. You know, and I spent time on the state court, too, probably before you were born. And the reason we get so many of these state court petitions is that the state system and the Attorney General's office does not do their job. We get very, very few. It's rare, federal habeas petitions, because the federal judges know that if they don't do it right, it's going to go right back to that same judge. Whereas in the state system, it goes back into the system, and it's gone, and the odds of that judge who handled the matter getting the case again are pretty remote. So the state court, maybe I ought to thank the system for job security for us. We've had to hire magistrates galore to go through all this. You know that? That's why we got magistrates to take care of state habeas petitions. And we wouldn't have that if the state system did its job. And the state Attorney General hired more young lawyers who were very conversant with the federal system. Now, John Van de Kamp understood that, and there was a sea change in the way those matters were handled. On this record, Your Honor, Petitioner has, by himself, with or without whatever assistance he claims to have received, demonstrated that he has the ability to understand the need to file. The fact that after the report and recommendation has been issued, he then seems to be able to understand the need to file. And that he made this representation himself, like Judge Hurwitz was asking about what the record shows. What does it show that he had the capability himself of preparing the petition? Your Honor, it is his burden to show. And at the point of the question you need to get. If I may, Your Honor. If I may. And I apologize.  No, I understand. Look, I understand. Look. I don't want to interrupt you, too. Do you know how many habeas petitions are filed in the district court here in Los Angeles? Central District? I don't have the statistics, Your Honor. Probably thousands of them. The last time I checked was 20 years ago, and it was more than a thousand. And it probably runs in. It's huge. We have a whole system to take care of that. We do the best we can. But we wouldn't have to devote all those resources if the state courts handled them properly. And that's something the Attorney General of the state ought to look into. I've been singing this song for a long time, but it doesn't seem to get up there. I mean, I've talked to Elville Younger. I know most of him. But anyway, they like to complain about the feds anyway. But, I mean, here's a case where you've got a person with a very, very low IQ. He's operating with jailhouse lawyers, and he has no assistance through these critical periods of a public defender or a lawyer who handles criminal matters who knows what he's doing or what she's doing. And he's faced with prison lockups and with deadlines and all the rest of it. And the lawyer, I think this lawyer left him, the lawyer he had. Isn't that right? The state appellate attorney's obligation to him ends at the end of the direct appeal. Well, whatever it does, he didn't have enough commitment, personal commitment to see the thing through. So then he's left out there at the mercy of these deadlines and jailhouse lawyers and all the uncertainties of prison lockdowns and all the rest of it. And then it comes here. So what's wrong with sending it back and having a hearing and giving one of our judges a chance to take another look at it and to consider, if it's appropriate, equitable funding? Earlier, Your Honor, you expressed a very large concern about judicial resources. Sending this case back would be expending more judicial resources on a matter where the record already establishes the petitioner can't satisfy the bill's test. That argument doesn't impress me. Judicial resources, yeah, I mean, it's a waste of time that impresses me. Okay? If I – just to sum up, first of all, Judge Price, I apologize. No, it's okay. I really apologize. I think he – he was proceeding pro se before the district court. My recollection is that he got a lawyer, I think, from us. Yes. Not from the district court. Correct. So I don't know what – I don't know how he managed to do it. But it struck me that what he presented was sufficient at least to meet the minimal showing that's required by Bill. But there's two – there's actually – there's, like, three parts to Bill. The showing that his mental impairment prevented him from understanding his need to meet the one-year statute. And you came back and you said, well, he was told. There's another part of that first part, a second, that he has the capability of doing the job of preparing a petition and actually getting it filed in light of his mental capacity or lack of mental capacity. And then he also has to show that he acted diligently. And, you know, I just don't – I don't think the district court had the benefit of Bill's. I mean, ultimately, as Judge Hurwitz has suggested, on the merits he may not have much of a claim. But we tried to lay down a test for the magistrate judges and for the district courts and Bell's to give them some parameters to work with in handling these claims of equitable tolling. This is not the only one we've seen. We see them all the time. And Bell's was an attempt to lay a framework, to set down a framework for the district courts and magistrate judges to follow. And I guess it may not be that the district judge has to hold an evidentiary hearing. That's a separate issue. The real question is just whether we should say to the district judge, intervening case, take a look at this and see what you think. And if I just may, bear with me for one second. In laws, I argued laws before this court. Judge Pragerson was on the panel of laws. So it's good to see you again, Your Honor. In laws, what actually happened once we got back to district court, we didn't even – we just went to the merits of the petition. We didn't go back to timeliness. We – my office's position was that should there be a problem with the merits, then we could revisit timeliness at that time. Right. Ultimately, you need to. Yes. Great. Thank you again. Okay. And again, I apologize, Your Honor. No, it's okay. Thank you. Who was the district judge in laws? The district judge in laws, I don't remember. Oh. 2003, Your Honor. I don't remember the district court judge. Okay. Thanks.
judges: Pregerson, Paez, Hurwitz